**Silva TONAPETYAN, Plaintiff–Appellant,**

v.

**William A. HALTER, Commissioner of Social Security Administration,\* Defendant–Appellee.**

No. 99–56486.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2001

Filed March 19, 2001

---

\* William A. Halter, is substituted for his predecessor, Kenneth S. Apfel, as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

John Ohanian, Los Angeles, California, for the plaintiff-appellant.

Jeffrey H. Baird, Kaladharan M.G. Nayar, San Francisco, California, for the defendant-appellee.

Before: PREGERSON, CANBY and DAVID R. THOMPSON, Circuit Judges.

CANBY, Circuit Judge:

Silva Tonapetyan appeals from the district court's summary judgment affirming the decision of the Commissioner of Social Security denying her supplemental security income disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Tonapetyan asserted that she was disabled as the result of a number of physical and mental impairments. She contends that the administrative law judge (ALJ) improperly: (1) determined that she lacked credibility; (2) rejected the opinions of her treating physicians in favor of the opinions of examining physicians and non-examining medical experts; and (3) failed to develop the record fully and fairly. We have jurisdiction under 28 U.S.C. § 1291. Because we hold that the ALJ failed to develop fully the record with respect to Tonapetyan's mental impairment, we re-verse the judgment of the district court and remand with instructions to remand the case to the Commissioner for further proceedings.

We review de novo the district court's grant of summary judgment. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996). We will uphold the ALJ's decision if it is free of legal error and supported by substantial evidence.

### I. Credibility Assessment

The ALJ's determination that Tonapetyan lacked credibility was crucial to his assessment of Tonapetyan's impairments and her residual functional capacity. On the basis of her lack of credibility he discounted her subjective statements regarding her own limitations and rejected the opinions of treating and examining physicians who had relied significantly on her subjective statements to reach their conclusions. Tonapetyan argues that all of the ALJ's stated reasons for discrediting her testimony are flawed. On this record, we find no such flaws. We recognize, however, that the ALJ's credibility determination may have been affected by his assessment of Tonapetyan's mental condition-a subject on which we are remanding for further proceedings. We proceed with our analysis of the credibility determination on the record before us, then, with the understanding that the Commissioner is to reassess credibility on remand if further proceedings concerning Tonapetyan's mental condition render such reassessment appropriate.

Generally, a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone. Social Security Rule (SSR) 96–7p (1996). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen,* 885 F.2d

597, 602 (9th Cir.1989). Neither may the ALJ rely on his own observations of the claimant at the hearing as the sole reason for rejecting the claimant's complaints. *Id.* In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony. *Id.* at 604 n. 5; *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir.1991). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements. *Fair,* 885 F.2d at 602.

Here, the ALJ discredited Tonapetyan's testimony, citing her lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations. The ALJ gave a detailed explanation supporting each of these reasons. To illustrate Tonapetyan's lack of cooperation during the consultative examinations, for example, the ALJ noted Dr. Schatz's observation that she showed "poor effort." To illustrate her tendency to exaggerate, the ALJ noted Dr. Greenleaf's observation that she was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work. As evidence of her uncooperativeness at the hearing, the ALJ noted that she asserted at the hearing that she could not remember her address, telephone number, height, or weight; yet, she remembered all of these things and answered more difficult questions when she was examined by consulting physicians. These are but a few examples of the ample list of specific and convincing reasons the ALJ gave for discrediting Tonapetyan's testimony.

There is no merit in Tonapetyan's contention that the ALJ should have given her a chance, while at the hearing, to explain the inconsistent statements and other factors that led him to find her not credible. Even if we discount some of the ALJ's observations of Tonapetyan's inconsistent statements and behavior, which might have innocent explanations as Tonapetyan contends, we are still left with substantial evidence to support the ALJ's credibility determination.

## II. Conflicting Medical Evidence

### A. Physical impairment

The ALJ determined that Tonapetyan suffers from the medically-determinable physical impairment of severe chronic musculoskeletal pain and that she has a residual functional capacity to perform medium work, given her exertional limitations. Tonapetyan contends that the ALJ improperly rejected the opinions of her treating physician, Dr. Gevorkian, and her examining physician, Dr. Ngaw, and improperly favored the opinions of a second examining physician, Dr. Schatz, and a non-examining medical expert, Dr. Brown. Again, on the present record, we reject the contention with regard to Tonapetyan's physical impairments and exertional limitations. We note here, as well, that one of the reasons this medical testimony was rejected was that it was based on history related by Tonapetyan, who was found not credible. If proceedings on remand lead to a change in the credibility determination, the medical testimony concerning her physical impairments and exertional capacity will have to be reassessed as well. With that caveat, we now address the determinations of physical impairment and exertional capacity on the present record.

■ Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). When there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir.1995); *see also Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th

Cir.1986). Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Magallanes,* 881 F.2d at 752.

■ The ALJ gave sufficient reasons, supported by substantial evidence in the present record, for rejecting the opinion of Dr. Gevorkian, who diagnosed Tonapetyan as suffering from varicose veins, angina pectoris, polyarthritis, headaches, and lumbosacral radiculopathy, and who opined that she could not perform even sedentary work on a sustained basis. The ALJ rejected Dr. Gevorkian's opinion because it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of Tonapetyan's alleged conditions. Our review of the record confirms that Dr. Gevorkian's reports and assessments presented at the hearing contain no objective evidence to support his diagnoses, not even a clinical observation. When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992).

■ The present record also supports the ALJ's rejection of the opinion of examining physician Dr. Ngaw, who, like Dr. Gevorkian, opined that Tonapetyan was totally disabled by her physical impairments. The ALJ rejected Dr. Ngaw's opinion for lack of objective support, noting that Dr. Ngaw relied only on Tonapetyan's subjective complaints and on testing within Tonapetyan's control. Because the present record supports the ALJ in discounting Tonapetyan's credibility, as discussed above, he was free to disregard Dr. Ngaw's opinion, which was premised on her subjective complaints. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir.1989).

■ The contrary opinions of Drs. Schatz and Brown serve as additional specific and legitimate reasons for rejecting the opinions of Drs. Gevorkian and Ngaw, and provide assurance that the record was sufficiently developed with regard to the issue of physical impairment. Moreover, their opinions serve as substantial evidence supporting the ALJ's findings with respect to Tonapetyan's physical impairment and her exertional limitations. Dr. Schatz's opinion alone constitutes substantial evidence, because it rests on his own independent examination of Tonapetyan. *Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984). Contrary to Tonapetyan's argument, Dr. Schatz's opinion is not internally inconsistent. It is consistent for Dr. Schatz to find that Tonapetyan suffers from limited back motion and pain, and mild to moderate varicosities in her lower left leg, yet conclude that she can lift and carry 20 to 50 pounds and stand or walk 4 to 6 hours per workday. Finally, Dr. Brown's opinion constitutes substantial evidence, because it rests on Dr. Schatz's objective findings, which are independent of those relied on by Drs. Gevorkian and Ngaw. *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir.1996); *Magallanes,* 881 F.2d at 752.

In sum, we conclude that, on the present record, the ALJ's assessment of Tonapetyan's physical impairments and the exertional limitations emanating from them is both free of legal error and supported by substantial evidence.

### B.  Mental Impairment

The ALJ determined that Tonapetyan suffers from the medically-determinable mental impairment of non-severe dysthymia, which restricts her to unskilled work. In reaching this conclusion, the ALJ relied on the opinion of examining psychiatrist, Dr. Greenleaf, who concluded that Tonapetyan's cognitive skills are intact and that she can handle complex instructions, and on the opinion of non-examining psychological expert, Dr. Walter, who concluded that Tonapetyan suffers from mild depression. The ALJ rejected the opinions of two phy-

sicians as unsupported by objective clinical findings and heavily reliant on Tonapetyan's subjective statements; they were her treating psychiatrist, Dr. Trabulus, who had diagnosed her with chronic schizophrenia, and her examining psychiatrist, Dr. Grant, who diagnosed her with depressive disorder with psychotic features.

The Commissioner contends that, on the record as it stands, the ALJ properly resolved these conflicting opinions, just as he resolved to our satisfaction the similarly conflicting evidence of Tonapetyan's physical impairment. On the basis of Dr. Walter's equivocal testimony with respect to Tonapetyan's alleged mental impairment of schizophrenia, however, we find the current record incomplete.

### III. Full and Fair Hearing

▮▮▮ The ALJ in a social security case has an independent " 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)). This duty extends to the represented as well as to the unrepresented claimant. *Id.* When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts. *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir.1978). In this case, Tonapetyan was represented, but by a lay person rather than an attorney. The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir.1992). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the

hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.1998); *Smolen*, 80 F.3d at 1288.

Although the ALJ here did not specifically find that the evidence of Tonapetyan's mental impairment was ambiguous, or that he lacked sufficient evidence to render a decision, he relied heavily upon the testimony of the medical expert, Dr. Walter, who found just that. Dr. Walter began his testimony by describing Dr. Trabulus's lack of anecdotal records as "confusing," and by recommending that a more detailed report be obtained. He found it "difficult to say" whether the medical record was complete enough to allow the ALJ to reach a conclusion in the case. When asked for his diagnosis, he noted that Tonapetyan was unquestionably "somewhat depressed." He resisted concluding that she did or did not suffer from schizophrenia, however, suggesting that he would "have to see more evidence of that and a more detailed explanation" from Dr. Trabulus. Only when pressed by the ALJ for a diagnosis "based upon what's in the record" did he give his diagnosis of mild depressive affective disorder, or "dysthymia." Yet, he remained equivocal throughout his testimony. For example, when asked about Tonapetyan's restrictions of daily activities, he responded: "Well, we have a dichotomy here between the two reports [of Drs. Trabulus and Greenleaf].... I have no way of just saying let's divide them. I would say—I guess, I guess I have a difficult time with it." Finally, when asked by Tonapetyan's lay representative whether a complete report from Dr. Trabulus would change his opinion regarding Tonapetyan's mental impairment, Dr. Walter responded: "Yes. If you clarified her symptoms that she's telling him."

The ALJ clearly relied heavily on Dr. Walter's testimony, adopting his "dysthymia" diagnosis as well as his criticisms of Drs. Grant and Trabulus. Given this reli-

ance, the ALJ was not free to ignore Dr. Walter's equivocations and his concern over the lack of a complete record upon which to assess Tonapetyan's mental impairment. Moreover, he was not free to ignore Dr. Walter's specific recommendation that a more detailed report from Dr. Trabulus be obtained. That he did so constitutes reversible error. We therefore direct a remand for further development of the record with regard to Tonapetyan's mental impairment, and for further appropriate proceedings in light of that additional development.

## IV. Conclusion

We conclude that the ALJ failed to develop the record fully and fairly with respect to Tonapetyan's possible mental impairment, including schizophrenia or other disorders with psychotic features. Accordingly, we reverse the district court's summary judgment and remand with instructions to remand to the Commissioner for further administrative proceedings consistent with this disposition.

**REVERSED AND REMANDED, with instructions.**