**Delores HOLLAND Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner, Commissioner of the Social Security Administration aka Kenneth S. Apfel, Defendant—Appellee.**

No. 01–57253.
D.C. No. CV–00–00805–AN.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 6, 2002.*

Decided May 29, 2003.

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Before REINHARDT, O'SCANNLAIN and PAEZ, Circuit Judges.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We review *de novo* a district court's upholding of the Commissioner's denial of benefits, and we review the Commissioner's decision for substantial evidence and legal error. *To-*

## MEMORANDUM **

Delores Holland appeals the district court's grant of summary judgment to the Commissioner of the Social Security Administration, which affirmed the denial of her application for disability insurance benefits and supplemental security income. Holland raises two issues on appeal. First, Holland argues that the Administrative Law Judge (ALJ) erred when she rejected the opinions of Holland's treating physicians. Second, Holland argues that the ALJ did not articulate legally sufficient reasons in determining that she lacked credibility with respect to her pain testimony. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for payment of benefits.[1]

### I.

Although the ALJ found that Holland suffered from severe probable hereditary sensory motor neuropathy and lumbar disc disease, she concluded that Holland had the ability to perform sedentary work. The ALJ rejected the opinions of Holland's two treating physicians, Dr. Thomas Duralde and Dr. David Edelman, who concluded that Holland did not have sufficient residual functional capacity to perform any work. The ALJ credited the opinion of a non-examining doctor, who reviewed Holland's medical records and opined that Holland could perform sedentary work.[2] Substantial evidence does not support the non-examining physician's conclusion, and therefore the ALJ failed to meet the heightened standard

*napetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir.2001).

2. Although the treating doctors' and the non-examining doctor's conclusions as to residual functional capacity contradict each other, all three doctors agreed on a diagnosis of probable hereditary sensory motor neuropathy.

required for rejecting a treating physician's opinion in favor of that of an examining or non-examining physician. See *Lester v. Chater,* 81 F.3d 821 (9th Cir. 1995), *as amended* April 9, 1996.

An ALJ cannot reject a treating physician's opinion, even if it is contradicted by the opinions of other doctors, unless she provides "specific and legitimate reasons" supported by substantial evidence in the record. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir.2001). The ALJ stated two specific reasons for rejecting the treating doctors' opinions: the extreme limitations indicated by the treating physicians were allegedly not supported by the medical records and Holland's subjective pain testimony was allegedly not credible. However, these reasons are not supported by substantial evidence.

The treatment records from Doctors Edelman and Duralde documented numerous diagnostic tests indicating diminished sensation in Holland's legs and feet, numbness, and severe pain consistent with their diagnosis of hereditary sensory motor neuropathy, probable central herniation of the L5–S1 disc, and lumbar disc disease. Dr. Duralde prescribed at least five different medications over the course of treatment due to the persistence of Holland's pain, numbness, and diminished sensation. Dr. Edelman's and Dr. Duralde's records consistently showed that Holland's condition did not improve: the doctors were unable to elicit ankle reflexes, numbness persisted, sharp pain increased in severity throughout Holland's legs and back at all times (including when seated), and Holland continued to fall and injure herself. Furthermore, the doctors continued to restrict Holland from working throughout the treatment period.

The ALJ also stated that the clinical findings of Doctors Duralde and Edelman "demonstrate[d] only mildly abnormal evidence of denervation, mild central disc bulge ... and a normal CT scan of the head, normal laboratory testing and a normal sensorimotor neuropathy profile." The clinical findings, however, reveal severe symptoms of neuropathy that fully supported the doctors' assessment of Holland's residual functional capacity. The fact that each contributing condition was at times individually described as mild does not minimize the significance of the clinical findings regarding numbness, loss of sensory function and reflexes, and the loss of balance that the treating physicians relied on to support Holland's limited residual functional capacity. Indeed, the ALJ essentially recognized this when she found that "[t]he medical evidence establishes that the claimant has *severe* probable hereditary sensory motor neuropathy and lumbar disc disease." (emphasis added).

Finally, we note that there is nothing in the administrative record to suggest that a more aggressive treatment plan was available to Holland or that it would have been more effective. Indeed, Holland's condition prompted her treating physicians to consult with other experts to determine if she was a surgical candidate; ultimately, however, as Holland testified, the doctors determined that due to the nature of her disability, surgery "could do more harm than good." Every record of treatment also includes a statement that Holland complained of pain that was often severe and debilitating, supporting her treating physicians' conclusions. Substantial evidence does not support the ALJ's decision to reject the opinions of Holland's treating physicians.

II.

Holland next argues that the ALJ erred in rejecting her testimony regarding her subjective complaints of pain when the

ALJ found that Holland was not "sufficiently credible to justify any further limitations other than those established by the objective record." When an ALJ evaluates a claimant's credibility regarding subjective pain testimony, the ALJ must conduct a two-stage analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). Holland clearly met the first stage of the analysis by presenting objective medical evidence of her impairment, sensory hereditary neuropathy, that could reasonably be expected to produce some degree of pain. *Id.* at 1282–83.

When a claimant demonstrates the existence of a condition that would cause some degree of pain or dysfunction, the ALJ must articulate specific and legitimate reasons for rejecting the subjective pain testimony. "[T]he ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th cir.2001) (internal citations omitted). Thus, when no evidence of malingering exists in the record, the ALJ must articulate clear and convincing reasons for rejecting the claimant's testimony regarding pain. *Smolen*, 80 F.3d at 1273.

■ The ALJ identified two major reasons for rejecting Holland's pain testimony. First, the ALJ pointed to a consulting physician's medical notation of October 15, 1996 that Holland "works at a school in physical education." The ALJ concluded that this citation indicated that Holland was working after the alleged onset of her disability. However, in light of Holland's testimony under oath that she stopped working on June 1, 1996, the other medical records from this time period stating that Holland was "on disability" and instructed not to work by her treating physician, and the use of the present tense "works" in other medical records to describe Holland's profession rather than whether or not she was actually working at the time, the ALJ's conclusion is not supported by the evidence. The October 15 notation followed several appointments with her treating physician Dr. Duralde, who had repeatedly extended his restriction that Holland not return to work. Additionally, Holland testified that she received California state disability insurance payments between June 1996 and June 1997. State disability benefits are only payable if the worker is unable to work as a result of an illness or disability. CAL. UNEMP. INS.CODE § 140.5. The administrative record also includes Holland's Social Security Administration Daily Activities Questionnaire, in which she stated that she had lost her job as a result of her condition because the school determined that it was not safe for her to continue to work around children.

The ALJ also cited a July 11, 1997 notation in Dr. Duralde's records describing Holland's attempt to attend a training class as evidence that "the claimant's self-reported inability to function is out of proportion with her demonstrated capacity." The ALJ does not cite the remainder of the July 11, 1997 notation, in which Dr. Duralde advised Holland to stop the sitting and driving and prescribed vicodin for the pain. Dr. Duralde concluded that Holland "[m]ay need to see neurosurgeon again as I think we're dealing with a mixed picture of hereditary neuropathy and disc disease."

The ALJ also failed to cite Holland's response to the Social Security Administration's Daily Activities Questionnaire, which explains why Holland was willing to endure pain in driving an hour to an eight hour computer class. After she had to stop working as a playground monitor because she fell on a child and broke her toes, she "went to computer class for re-

training and my back got so bad the Doctor told me to quit."

Holland's failed attempt to obtain retraining does not detract from the credibility of Holland's testimony; indeed, the fact that she had to quit after three weeks supports her pain testimony. "The Social Security system was not designed to provide a disincentive for disabled individuals to struggle to improve and function." *Rollins v. Massanari*, 261 F.3d 853, 861–62 (9th Cir.2001) (Ferguson, J., dissenting). It would be a perverse result if we punished disabled individuals who made an effort to work, and reached beyond their limited capacity, but failed due to the restrictions imposed by their disability.[3]

### III.

■ There are no unresolved issues in the record, and the ALJ would be required to award benefits if the treating physician's opinions and Holland's pain testimony were credited. The treating physicians' conclusion that Holland cannot perform any kind of work is supported by their medical records and Holland's subjective pain testimony. The ALJ found that Holland met the disability insured status requirements of the Act on June 1, 1996, the date that she stated she became unable to work, and continued to meet them through the date of the ALJ's decision. Furthermore, the ALJ found that the medical evidence established that Holland has severe probable hereditary sensory motor neuropathy and lumbar disc disease. The ALJ also found that Holland is unable to perform her past relevant work. If the treating physicians' findings and Holland's testimony are credited, Holland must be found to lack the residual functional capacity for any work, including sedentary

work. Thus, no further proceedings are necessary. *Reddick v. Chater*, 157 F.3d 715, 728–30 (9th Cir.1998). We reverse the judgment of the district court and remand with instructions to remand to the ALJ for an award of benefits.

REVERSED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting.

I must respectfully dissent from the decision to reverse the district court and to award disability benefits. The Commissioner's decision to deny benefits may be overturned "only if it is not supported by substantial evidence." *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir.1999). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Id.* Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Id.; see also Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir.1998) ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").

First, the ALJ found that the work restrictions assessments proffered by Holland's treating physicians were inconsistent with the medical evidence. The ALJ may only reject a treating physician's opinion for clear and convincing reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001). The ALJ, however, need not accept a treating physician's opinion that is brief, conclusory, and unsubstantiated by objective medical evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995). Here, the ALJ articulated con-

---

**3.** Additionally, Holland testified that she did not engage in any substantial activity. She explained that she did not drive, cook, clean, travel, or go out of the house with the primary exception of her visits to the doctor.

crete, specific reasons for rejecting the work restrictions assessments as "extreme," finding that the medical records documented only conservative treatment, that the clinical findings demonstrated only mildly abnormal evidence of denervation, and there was record evidence of only a mild central disc bulge. The ALJ was therefore entitled to reject the treating physicians' work restrictions assessments because they were unsubstantiated by objective medical evidence. *Johnson*, 60 F.3d at 1432.

Second, the ALJ discounted Holland's subjective pain testimony. To do so, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). "[T]he Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599. Here, the ALJ found that Holland's allegations of total disability were inconsistent with her daily activities. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991) ("If the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities."). "It may well be that a different judge, evaluating the same evidence, would have found [the] allegations ... credible." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.1989). This ALJ did not.

Accordingly, I respectfully dissent.