**Patricia D. SHAFER, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant—Appellee.**

**No. 03–15887.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2004.

Decided Jan. 13, 2005.

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Mark Ross Caldwell, Esq., Caldwell & Ober, PLLC, Phoenix, AZ, for Plaintiff–Appellant.

Theophous H. Reagans, Esq., Social Security Administration Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: O'SCANNLAIN, COWEN,* and BEA, Circuit Judges.

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

1. Although the parties and the District Court refer to the District Court's disposition as "summary judgment," such terminology is most inaccurate. The District Court sat as an appellate forum, as do we, and adjudicated the appeal under the same standards of review as we apply here.

2. To qualify for disability benefits, a claimant must show that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The initial burden of proving disability rests with the claimant. § 423(d)(5); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989). If the claimant establishes an inability to perform her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Swensen*, 876 F.2d at 687.

MEMORANDUM **

Plaintiff–Appellant Patricia Shafer ("Shafer" or "Claimant") appeals the District Court's grant of summary judgment[1] to Defendant–Appellee Commissioner of Social Security ("Commissioner") affirming the Commissioner's denial of Shafer's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 *et seq.*

Shafer alleged disability from her former employment as an audit clerk stemming from chronic bronchitis, asthma, and a herniated and bulging disk. Upon performing the five step disability evaluation set forth in 20 C.F.R. § 404.1520,[2] the Administrative Law Judge ("ALJ") concluded at step four that Claimant is not

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled." 20 C.F.R. § 404.1520. Step one inquires whether the claimant is engaging in substantial gainful activity. If so, the claimant is not disabled. If not, the Commissioner proceeds to step two. Step two assesses whether the claimant suffers from a "severe" impairment. If not, the claimant is not disabled. If so, the Commissioner proceeds to step three. Step three examines whether the claimant's impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1. If so, the claimant is automatically deemed disabled. If not, the Commissioner proceeds to step four. Step four entails a determination of whether the claimant is capable of performing her past work. If so, she is not disabled. If not, the Commissioner proceeds to step five. Finally, step five asks whether the claimant has the residual functional capacity to perform any other substantial gainful activity in the national economy. If not, the claimant is disabled. The burden lies with the claimant to establish steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). In step five, the burden shifts to the Commissioner. *Id.*

disabled within the meaning of the Act because she retains the residual functional capacity for sedentary work despite her medically determinable impairments.

Shafer asserts that the District Court overlooked four errors committed by the ALJ: (1) the ALJ erred in rejecting without further developing the record the opinion of a non-examining medical expert who testified at the hearing that Shafer suffered from anxiety, which caused hyperventilation syndrome resulting in substantial fatigue; (2) the ALJ erred in rejecting without providing clear and convincing reasons the opinion of Shafer's treating physician regarding non-exertional limitations; (3) the ALJ erred in rejecting without providing clear and convincing reasons Shafer's testimony describing her pain and fatigue; and (4) the ALJ erred in assessing in categorical terms Shafer's residual functional capacity for the exertional demands of work instead of providing a function-by-function analysis and also erred in failing to undertake any assessment of Shafer's non-exertional residual functional capacity. As discussed below, we agree with Claimant's assertions of error. The ALJ's opinion in this matter is conclusory and infected with legal error. Accordingly, we reverse the judgment of the District Court and remand the case to the Commissioner for further proceedings.

## I.

Claimant's medical background and relevant facts are known to the parties and need not be recited here.

## II.

The District Court had jurisdiction to review the final decision of the Commissioner denying Claimant's applications for DIB benefits under Title II of the Act pursuant to 42 U.S.C. § 1383(c)(3). Claimant filed a timely notice of appeal to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■■■ We review *de novo* the District Court's grant of summary judgment. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir.2001). We will uphold the Commissioner's decision if it is free of legal error and supported by substantial evidence. *Id.* The harmless error rule is applicable. *Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1990).

## III.

We address each of Claimant's contentions of error in turn.

A. *The ALJ erred in rejecting without explanation or further development of the record Dr. Harris' diagnoses of anxiety and hyperventilation syndrome, resulting in incapacitating fatigue.*

Clifford J. Harris Jr., M.D., the non-examining medical expert, opined at the administrative hearing that Shafer suffers from anxiety and hyperventilation syndrome which, in turn, causes her to be "very fatigued." Claimant observes that the ALJ's opinion completely ignores this portion of Dr. Harris' testimony, and argues that the ALJ's failure to consider it is reversible error. We agree.

■■■ The ALJ in a social security case has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered," *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (internal quotation marks omitted), even where a claimant is represented by counsel. *Id.* This duty is triggered when the record reflects ambiguous evidence, or the ALJ finds that the record is inadequate to allow for a proper evalua-

tion of the evidence. *Id.* (internal citations omitted).

Although the ALJ here made no finding that the evidence of Shafer's anxiety induced hyperventilation syndrome resulting in fatigue was ambiguous, or that he lacked sufficient evidence to render a decision, he is not free to assign controlling weight to Dr. Harris' opinion regarding Claimant's residual functional capacity and yet disregard without explanation that portion of Dr. Harris' opinion regarding anxiety induced hyperventilation syndrome resulting in fatigue. *Cf. id.* Indeed, Dr. Harris "felt very strongly" that Claimant was suffering from hyperventilation syndrome, and testified that such patients are "very fatigued." Moreover, the Social Security Administration states in SSR 96–7[3] that "[t]he adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment *when the record contains information to suggest that such an impairment exists,* and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms." 61 Fed. Reg. 34483 n. 3 (July 2, 1996) (emphasis added); *see* 20 C.F.R. § 404.1529 ("We will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and you allege pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.").

The conclusory nature of the ALJ's opinion makes it is difficult to discern his reasoning. It is clear, however, that the ALJ neither mentioned Dr. Harris' explication for Claimant's fatigue, or credited Claimant's testimony regarding its debilitating impact. Indeed, that Shafer attested to being fatigued does not even appear in the ALJ's opinion. Although the ALJ's rejection of Shafer's allegations "of disabling pain and limitations" as not supported by the "examination, x-ray, and laboratory findings in the file" may in itself be correct, he cannot ignore and it cannot be disputed that Dr. Harris' testimony contains information suggesting a fatigue-induced impairment, and that Shafer testified to debilitating fatigue. SSR 96–7 contemplates that it is precisely under this set of circumstances that the ALJ must further develop the record.

In contravention of the governing regulations, the ALJ completely disregarded this portion of Dr. Harris' testimony without expressing why. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). If the ALJ thought he needed additional information to properly evaluate Dr. Harris' opinion, he had a duty to conduct an appropriate inquiry. Having failed to fully develop the record regarding Dr. Harris' uncontroverted opinion, the ALJ's failure to address Claimant's fatigue and its cause is undoubtedly legal error. *See, e.g., Smolen v. Chater,* 80 F.3d 1273, 1282, 1286, 1288 (9th Cir.1996) (finding legal error where ALJ ignored medical evidence of claimant's other impairments and additional legal error where ALJ rejected uncontradicted opinion of treating physician without developing the record); *Cotton v. Bowen,* 799 F.2d 1403, 1408–09 (9th Cir.1986) (finding legal error where

**3.** The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy. Although the SSRs do not have the force of law, we nonetheless give deference to the Secretary's interpretation of its regulations, unless application produces a result inconsistent with the statute and regulations.

ALJ's findings completely ignored medical evidence without giving specific, legitimate reasons for doing so), *superceded by statute on another point as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir.1990).

B. *The ALJ erred by rejecting treating physician Dr. Kirk Butler's opinion regarding Claimant's nonexertional limitations without providing clear and convincing reasons.*

Kirk Butler, M.D., Shafer's treating physician, opined that she suffers from moderately severe impairments that frequently cause her to experience deficiencies of concentration, persistence, and pace which manifest themselves in failure to complete tasks in a timely manner. The vocational expert Mr. Nathan Dean testified that all work activity would be precluded for an individual suffering from these impediments. The ALJ rejected Dr. Butler's view of Claimant's limitations because "according to Dr. Harris the limitations of Dr. Butler are not consistent with his treatment notes and with the objective evidence of record.... Dr. Harris took into consideration the entire medical file when assessing the claimant's residual functional capacity whereas Dr. Butler's opinion is based only on his own treatment records." (E.R. at 102.) We agree with Claimant that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Butler's opinion.

■ Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant ("treating physician"); (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat the claimant, but review the claimant's medical records ("non-examining physician"). *See* 20 C.F.R. § 404.1527(d). Ordinarily more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (as amended). The ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician (or examining physician) without providing "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 830–31. The opinion of a non-examining doctor cannot alone constitute substantial evidence that warrants the rejection of the opinion of either an examining or treating physician. *Id.* at 831. The rejection of the opinion of an examining or treating physician may, however, be based in *part* on the testimony of a nontreating, non-examining medical advisor, when consistent with other independent evidence in the record. *Morgan v. Apfel*, 169 F.3d 595, 602 (9th Cir.1999) (emphasis added). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989) (internal quotation marks omitted).

■ In this case, the ALJ appears to have treated Dr. Butler's opinion as controverted by the testimony of Dr. Harris, the non-examining medical expert. This treatment, however, was erroneous. Dr. Harris testified that Shafer has "a lot of symptoms and a meager amount of objective evidence supporting these things." (E.R. at 82.) This conclusion was based on his observations that Claimant has normal pulmonary function between asthma attacks, responds very well to medication, has only minimal degenerative disc disease that does not adequately explain her back pain, and that he was unable to locate studies or documentation regarding the frequency of Claimant's asthma attacks, her migraine associated symptoms, her mi-

graine treatment, or the gastroesophageal reflux disease diagnosis. He added that, based on the record before him, she probably does suffer from gastroesophageal disease, and that her asthma is late onset asthma, which is usually much more severe than other types. Dr. Harris did not comment upon, let alone contradict, Dr. Butler's assessment that Claimant's inflictions together cause moderately severe pain manifesting itself in an inability to concentrate and complete tasks in a timely manner. As such, clear and convincing reasons supported by substantial evidence are required to reject Dr. Butler's opinion regarding Claimant's pain and non-exertional limitations.

■■■■■ The ALJ's statement that "according to Dr. Harris the limitations of Dr. Butler are not consistent with his treatment notes and with the objective evidence of record" (E.R. at 102) is thus factually inaccurate. As explained above, Dr. Harris never so attested. At the administrative hearing, the ALJ himself remarked that "I can look at his [Dr. Butler's] treatment notes ... and I give that full, full credit but the conclusions he's talking about, the pain seriously affecting her ability to function ... that's just not supported by the record nor the medical evidence." (*Id.* at 85.) To the extent that the ALJ intended to attribute the opinion regarding the unsustainability of Dr. Butler's limitations to Dr. Harris and accordingly reject Dr. Butler's analysis on that basis, as indicated by the written opinion, he committed legal error because the opinion of a non-examining doctor can never alone provide substantial evidence to reject the opinion of a treating doctor. *See Lester*, 81 F.3d at 830 (holding legal error ALJ's rejection of treating physicians' opinions because they conflicted with the testimony of a non-examining medical advisor). If, however, the ALJ intended to

reject Dr. Butler's non-exertional limitations because *he* determined that Dr. Butler's opinion is unsupported by the treatment notes, the ALJ still committed legal error in failing to describe how or why Dr. Butler's treatment notes do not support his uncontroverted opinion. That the treating physician's conclusions do not have objective support can constitute a legitimate basis for rejecting them. *See, e.g., Tonapetyan*, 242 F.3d at 1149 (upholding ALJ's rejection of treating physician's opinion as unsupported by rationale, objective medical findings, treatment notes, or even a clinical observation). Moreover, the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support its conclusion." *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986). The ALJ cannot, however, reject the uncontradicted opinion of a treating physician merely by stating in conclusory terms that the opinion is objectively unfounded. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir.1988)). Under any of these circumstances, the ALJ erred.

The ALJ's casual rejection of the opinion of Claimant's treating physician without furnishing sufficient explication constitutes legal error.

C. *The ALJ erred by failing to provide clear and convincing reasons for discrediting Shafer's subjective complaints.*

■■■■ Shafer testified before the ALJ that she was forced to lie down two to three hours per day as a result of fatigue, and that she felt she could no longer function at her job because of numerous daily

coughing spells, stress-induced incontinence, and back pain. The ALJ discredited Claimant's statements.

> The claimant's statements with regard to the impact of her impairments on her ability to work are not entirely credible. Subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision. The claimant's allegations of disabling pain and limitations are not supported by the medical evidence. Her allegations are exaggerated when compared with examination, x-ray, and laboratory findings in the file. The claimant testified, "I retired when I became age 55." With regard to the claimant's daily activities, she reported on February 29, 2000, that she plans and cooks her own meals, and does light household cleaning and laundry. She is able to drive a car and run errands by herself. She manages her bills and other business matters. She reads and watches television. Although, by her report, she is more limited than she has been in the past, her activities are not those of an individual unable to perform substantial gainful activity.

(E.R. at 102.)

■■■ Because there is no affirmative evidence of malingering in this case, the Commissioner's reasons for rejecting Shafer's testimony must be clear and convincing. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995) (as amended). Once evidence of an underlying medical impairment is introduced, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991) (en banc); *see also* SSR 96–7, 61 Fed.Reg. 34483, 34485 (July 2, 1996) ("An individual's statements about

the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). In addition, the ALJ "must state specifically *which* symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996) (emphasis added); *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993). This assures the reviewing court that the ALJ did not arbitrarily dismiss the claimant's testimony. *Bunnell,* 947 F.2d at 345–46.

The ALJ failed to specify which parts of Shafer's testimony were contradicted by what clinical observations, in contravention of this Court's admonition that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick,* 157 F.3d at 722 (internal quotation marks and citations omitted). Although the ALJ characterized Shafer's statements regarding the impact of her impairments on her ability to work as "not entirely credible," we cannot glean from the ALJ's opinion which portions of Shafer's testimony he did or did not credit. Indeed, given the ALJ's failure to acknowledge anywhere in the opinion Dr. Harris' "strong[ ]" belief that Shafer suffers from hyperventilation syndrome, he may have failed to consider Shafer's fatigue at all as unsupported by a medically determinable impairment. The sparse nature of the opinion makes this impossible to determine. This is legal error.

D. *The ALJ erred in assessing Claimant's residual functional capacity.*

Shafer argues that the ALJ's residual functional capacity ("RFC") assessment, conducted at step four of the five-step disability evaluation process, is legally flawed and led to his erroneous finding

that she could perform her past relevant work as an audit clerk. Specifically, she contends that the ALJ assessed her residual functional capacity for the exertional demands of work in categorical terms instead of providing a function-by-function assessment, and further that he failed to provide any assessment of her non-exertional residual functional capacity. We agree.

■■■■ The Commissioner examines the claimant's "residual functional capacity and the physical and mental demands" of the claimant's past relevant work, 20 C.F.R. § 404.1520(e), at step four of the sequential process. To find that the claimant is not disabled at step four, she must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir.2001). Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82–62 (1982).

■■■■ The Social Security Regulations require that the ALJ undertake a "function-by-function" analysis of the claimant's capacity to work according to exertional categories.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light medium, heavy, and very heavy.

SSR 96–8p (July 2, 1996).

In concluding that Shafer retains the residual functional capacity for sedentary work, the ALJ noted the differences between Dr. Butler's and Dr. Harris' assessments of Shafer's exertional limitations, and adopted Dr. Harris' opinion that she could perform sedentary labor as controlling because it is "strongly supported by the greater weight of the medical evidence," and because "according to Dr. Harris the limitations Dr. Butler gives are not consistent with his treatment notes and with the objective evidence of record.... Dr. Harris took into consideration the entire medical file when assessing claimant's residual functional capacity whereas Dr. Butler's opinion is based only on his own treatment records." (E.R. at 102.)

Taking into account both the ALJ's statements concerning Shafer's residual functional capacity made at the administrative hearing and his written opinion, *see* SSR 96–8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion ...."), the ALJ's RFC analysis falls far short of what the Social Security Regulations and accompanying Rulings require.

The chief problem with the ALJ's RFC analysis is that it fails adequately to consider fatigue. Shafer admitted at the administrative hearing that the "subjective symptoms of fatigue and pain ... are the gravamen of this case." (E.R. at 66.) Indeed, Claimant's counsel conceded that the findings on the musculoskeletal aspects of the case are minimal, and agreed with Dr. Harris in that regard. (*See id.* at 87.) Moreover, although Dr. Harris opined that Shafer is capable of sedentary labor, he stated that it was "difficult ... to say" whether she could sustain work activity predictably. This comment followed his testimony concerning hyperventilation syndrome and fatigue. (*Id.* at 79.) While the ALJ did address and reject—albeit erro-

neously, as described above—Dr. Butler's assessment regarding Claimant's moderately severe pain and its impact on both her ability to concentrate and her exertional limitations, neither his oral nor written opinions discussed fatigue.

The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. *See* SSR 96–8p. Information about symptoms must be given "careful consideration." *Id.* Pain and fatigue are not intrinsically exertional or non-exertional. *Id.* Accordingly, fatigue may affect both exertional and non-exertional assessments. In addition, the adjudicator "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. *Id.*

SSR 96–8p provides a blueprint for what an RFC assessment must contain in all cases in which symptoms are alleged: (1) a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; (2) a resolution of any inconsistencies in the evidence as a whole; and (3) a logical explanation of the effects of symptoms, including pain, on the individual's ability to work.

■ The ALJ's written opinion and oral opinions do none of these sufficiently. Although it is acceptable for the ALJ to rely on a non-treating, non-examining medical expert's residual functional capacity assessment as long as that opinion is "not contradicted by *all other evidence* in the record," *Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir.1989) (emphasis in original), is "consistent with other evidence," *id.,* and alone does not constitute

substantial evidence to support the Commissioner's determination, *see* SSR 96–8p, the ALJ is not free to blindly adopt the reviewing doctor's RFC assessment when contradicted by other evidence in the record, and cannot abandon without explanation allegations of pain or fatigue. This constitutes legal error.

## IV.

■ The error permeating the ALJ's opinion in this case cannot be ignored. Significantly, we cannot discern the bases for his conclusions. Accordingly, we reverse the judgment of the District Court and remand to the Commissioner for further proceedings. Upon undertaking a full and thorough examination of the entire record, the ALJ may very well arrive at the same conclusions. We express no opinion on the merits of this matter. On remand, the ALJ is free in his discretion to revisit the record and/or take such testimony as he deems appropriate or necessary.

REVERSED AND REMANDED.