**Carmen PADILLA, Plaintiff,**

v.

**Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.**

**No. CV 06–5160–RC.**

United States District Court, C.D. California.

Feb. 21, 2008.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

Steven G. Rosales, Lawrence D. Rohlfing Law Offices, Santa Fe Springs, CA, for Plaintiff.

Cedina M. Kim, Office of U.S. Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Carmen Padilla filed a complaint on August 17, 2006, seeking review of the Commissioner's decision denying her applications for disability benefits. On January 10, 2007, the Commissioner answered the complaint and the parties filed a joint stipulation on June 12, 2007.

## BACKGROUND

### I

On March 26, 2003 (protective filing date), plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since January 1, 1992,[2] due to gastritis, diabetes, breathing difficulties, back pain, and neuralgia. Certified Administrative Record ("A.R.") 24, 64–66, 72–75, 83, 92. The plaintiff's applications were initially denied on September 26, 2003, and were again denied following reconsideration. A.R. 24, 33–47. The plaintiff then requested an administrative hearing, which was held on January 10, 2005, before Administrative Law Judge Stuart M. Kaye ("the ALJ"). A.R. 48–49, 306–25. On April 15, 2005, the ALJ issued a decision finding plaintiff is not disabled. A.R. 17–27. The plaintiff appealed this decision to the Appeals Council, which denied review on July 12, 2006. A.R. 5–13.

### II

The plaintiff, who was born in Colima, Mexico, on November 27, 1941, is currently 66 years old. A.R. 64, 69–71. She has a sixth-grade education, does not read or speak English, and has previously worked as a sewing machine operator. A.R. 82, 84, 93, 96, 129, 316–17.

Since September 14, 1992, plaintiff has received medical treatment from various Los Angeles County medical facilities, including the Roybal Clinic, where she was diagnosed with diabetes mellitus, obesity, hypertension, hyperlipidemia, a seizure disorder, diabetic neuropathy, and arthralgias. A.R. 196–288, 293–305.

Between August 8 and 11, 2003, plaintiff was hospitalized at White Memorial Medical Center, where she was diagnosed with a seizure, as well as a history of seizures (x2) confined to the left side with numbness, Type II diabetes with fair control, and hyperlipidemia, among other things.[3] A.R. 132–33. On August 7, 2003, plaintiff underwent a head CT scan, which showed no mass, shift, bleed, or fracture, and no significant intracranial pathology. A.R. 169. An electrocardiogram performed August 7, 2003, was abnormal. A.R. 170. An electroencephalogram taken August 8, 2003, was normal. A.R. 167–68. On August 9, 2003, plaintiff underwent a chest CT scan, which provided no evidence of a pulmonary mass; however, scarring, pleural thickening and a few probable granulomas were noted scattered in the upper lung zones bilaterally. A.R. 165–66.

On August 26, 2003, Kristof Siciarz, M.D., an internist, examined plaintiff and found she "is limited due to diabetes and hypertension." A.R. 171–74. Nevertheless, Dr. Siciarz opined "[f]rom a functional standpoint, [plaintiff] can push, pull, lift and carry 50 pounds occasionally and 25 pounds frequently. She can stand and walk six hours in an eight[-]hour day. She

---

**2.** Plaintiff's Title II application states she became unable to work on January 1, 1993, rather than 1992. A.R. 64. However, this discrepancy is not material.

**3.** Hyperlipidemia is "a general term for elevated concentration of any or all of the lipids in the plasma." *Dorland's Illustrated Medical Dictionary*, 852 (29th ed. 2000).

can sit without limits. There are no limitations in hearing, seeing, speaking, handling and fine manipulations. Seizure precautions may apply."[4] A.R. 174.

On September 24, 2003, Debra Barach, M.D., a nonexamining physician, filled out a functional capacity assessment form in which she opined "the claimant's records show fair control of hypertension and diabetes[,]" A.R. 180, but noted plaintiff could only perform medium work and should avoid exposure to hazards.[5] A.R. 175–82.

Steven B. Gerber, M.D., a board-certified internist and cardiologist, testified at the administrative hearing, opining plaintiff does not have a severe impairment or combination of impairments. A.R. 310. Specifically, Dr. Gerber found plaintiff's diabetes mellitus "does not seem to cause any functional limitation" and plaintiff's "history of seizure disorder ... seems to be largely well-controlled with medical therapy...." A.R. 311. Dr. Gerber further opined Dr. Siciarz's opinions were "quite reasonable and consistent with ... the rest of the record." *Id.*

### DISCUSSION

### III

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir.2007); *Hoopai v. Astrue,* 499 F.3d 1071, 1074 (9th Cir.2007).

■ The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f),

---

4. Under Social Security regulations, this is medium work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

5. On September 26, 2003, Dr. Barach opined that between January 1992, and June 1996, plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 25 pounds. A.R. 185–92.

416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity at any time relevant to this decision. (Step One). The ALJ then found plaintiff does not have a severe impairment or combination of impairments; therefore, she is not disabled. (Step Two).

## IV

■ The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen,* 80 F.3d at 1290; *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987). However, an overly stringent application of the severity requirement violates the Social Security Act by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir.1994).

■ A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. *Webb,* 433 F.3d at 686; *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir.2001); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impair-

ments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b); *Webb,* 433 F.3d at 686. If a claimant meets his burden of demonstrating he suffers from an impairment affecting his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund v. Massanari,* 253 F.3d 1152, 1160 (9th Cir.2001) (emphasis in original); *Webb,* 433 F.3d at 686.

■ "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb,* 433 F.3d at 687 (citation omitted). However, as a lay person, an ALJ is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999) (per curiam); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975). Therefore, "[i]n rejecting a claim at step two, the [ALJ] 'may not properly find that a claimant has a certain capacity to perform work-related activities without the support of a physician's medical assessment.'" *Lopez–Navarro v. Barnhart,* 207 F.Supp.2d 870, 882 (E.D.Wis.2002) (citations omitted).

■ Moreover, "'[i]n Social Security cases, the ALJ has a special duty to fully

and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen,* 80 F.3d at 1288 (citation omitted); *Widmark v. Barnhart,* 454 F.3d 1063, 1068 (9th Cir.2006). This duty exists regardless of whether a claimant is represented by counsel. *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir.2003); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir.2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan,* 242 F.3d at 1150 (citations omitted); *Webb,* 433 F.3d at 687.

Here, based solely on the testimony of Dr. Gerber, the ALJ found plaintiff does not have a severe impairment or combination of impairments. *See* A.R. 26 ("According to Dr. Gerber, who reviewed the medical evidence of record prior to the hearing, the [plaintiff's] impairments do not meet or equal a Listing, and ... she is not functionally impaired. [¶] The undersigned agrees with Dr. Gerber's assessment."). However, in addition to opining plaintiff does not have a severe impairment, A.R. 310–11, Dr. Gerber agreed with Dr. Siciarz's opinion that plaintiff can perform the "medium range of activity with the addition of [a] seizure precaution...." A.R. 311. These opinions of Dr. Gerber's are inconsistent and ambiguous.

 When, a claimant's impairments limit her to medium work activity, such impairments are by definition "severe" since they have more than a minimal impact on the claimant's ability to lift, which is a basic work activity. *See, e.g., Hughes v. Barnhart,* 206 F.Supp.2d 771, 781 (W.D.Va.2002) (The claimant's "physical condition cannot be classified as nonsevere

under the regulations" when "[t]he uncontradicted medical evidence reveals that [the claimant] was restricted ... to the performance of medium work."); *Camacho v. Apfel,* 1998 WL 813409, *7 (E.D.N.Y.) ("Since lifting is itself a basic work activity, a limitation in that regard requires a finding of a severe impairment." (citations omitted)). In fact, Dr. Siciarz, with whom Dr. Gerber agreed, found plaintiff "is **limited** due to diabetes and hypertension." (emphasis added). Yet, Dr. Gerber concluded plaintiff is not limited, or does not have a severe impairment. This ambiguity should have triggered the ALJ's duty to further develop the record, and having failed to do so, the ALJ could not rely on Dr. Gerber's opinion to support his Step Two determination that plaintiff is not severely impaired. Thus, the ALJ's Step Two determination is not supported by substantial evidence.[6] *See, e.g., Burnett v. Barnhart,* 2004 WL 1093271, *10–11 (N.D.Ill.) (ALJ's decision not supported by substantial evidence in part because ALJ relied on testimony of medical expert without addressing internal inconsistencies in such testimony).

### V

 When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). "Generally when a court ... reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart,* 379

---

**6.** No other medical opinion except Dr. Gerber's opinion supports the ALJ's Step Two determination that plaintiff is not severely impaired. To the contrary, both Drs. Siciarz

and Barach opined plaintiff is limited to medium work, A.R. 174–82, which, as noted above, implies a severe impairment.

F.3d 587, 595 (9th Cir.2004) (citations omitted); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir.2004). Here, remand is appropriate so the ALJ can properly address the ambiguity in the record regarding the medical expert's testimony. *Tonapetyan,* 242 F.3d at 1150–51.

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

## JUDGMENT

IT IS ADJUDGED that Judgment be entered remanding the action to the Social Security Administration for further proceedings consistent with the Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g).