**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HEATHER ROUNDS,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COMMISSIONER SOCIAL SECURITY<br>ADMINISTRATION,<br>*Defendant-Appellee*. | No. 13-35505<br><br>D.C. No.<br>3:12-cv-00342-<br>MA<br><br>ORDER AND<br>AMENDED<br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, Senior District Judge, Presiding

Submitted May 7, 2015\*
Portland, Oregon

Filed August 4, 2015
Amended December 7, 2015

---

\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: William A. Fletcher and Andrew D. Hurwitz, Circuit Judges and Michael M. Baylson,[**] Senior District Judge.

Opinion by Judge Baylson

## SUMMARY[***]

### Social Security

The panel affirmed in part, and vacated in part, the district court's affirmance of the Commissioner of Social Security Administration's denial of claimant's application for Supplemental Security Income, and remanded for further proceedings.

The panel held that the Administrative Law Judge ("ALJ") failed to reconcile an apparent conflict between a vocational expert's testimony and the Dictionary of Occupational Titles, and that the error was not harmless. The panel remanded for the ALJ to determine whether there was a reasonable explanation to justify relying on the vocational expert's testimony.

---

[**] The Honorable Michael M. Baylson, Senior District Judge for the U.S. District Court for the Eastern District of Pennsylvania, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the ALJ must determine whether the claimant established fibromyalgia as a medically determinable impairment under the 2010 diagnostic criteria, and because the ALJ had not yet made this determination it may moot claimant's other arguments concerning her fibromyalgia diagnosis. The panel, accordingly, did not reach claimant's other arguments concerning her fibromyalgia diagnosis.

The panel held that the ALJ's residual functional capacity determination adequately incorporated the opinions of Dr. McKenna and Dr. Boyd. The panel also held that the ALJ did not improperly reject claimant's testimony. The panel further held that the ALJ did not err in the consideration of lay witness testimony.

## COUNSEL

Tim Wilborn, Wilborn Law Office, P.C., Las Vegas, Nevada, for Plaintiff-Appellant.

S. Amanda Marshall, United States Attorney, Ronald K. Silver, Assistant United States Attorney, David Morado, Regional Chief Counsel, Region X, and Thomas M. Elsberry, Assistant Regional Counsel, Seattle, Washington, for Defendant-Appellee.

**ORDER**

The opinion filed on August 4, 2015, and published at 795 F.3d 1177, is hereby amended and replaced by the amended opinion filed concurrently with this order.

With these amendments, Judges W. Fletcher, Hurwitz, and Baylson have voted to deny the petition for panel rehearing. Judges W. Fletcher and Hurwitz have voted to deny the petition for rehearing en banc, and Judge Baylson so recommends.

The full court has been advised of the petition, and no judge of the court has requested a vote on the petition for rehearing en banc. Fed. R. App. P. 35.

The petitions for rehearing and rehearing en banc are **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

BAYLSON, District Judge:

Appellant Heather Rounds appeals from the district court's affirmance of the decision of a Social Security Administration Administrative Law Judge (ALJ) denying her application for Supplemental Security Income (SSI). Although we find no error in the ALJ's rulings on several issues, we vacate in part and remand because the ALJ failed to reconcile an apparent conflict between a vocational expert's (VE) testimony and the Dictionary of Occupational Titles.

## BACKGROUND

### I. Rounds' Self-Reported Activities and Limitations

At the time of her SSI application, Rounds was 22 years old, a high school graduate, and the mother of a five-year-old daughter. She was living with her daughter, a roommate/boyfriend named Gavin Lipscomb, and her two cats. In the function report accompanying her application, Rounds described difficulties with social interactions, leaving the house, sleeping, remembering to eat and care for herself, and remembering instructions. Nevertheless, she stated that she was able to care for her daughter and her cats, prepare simple meals, share house work with her roommate, shop for groceries, and pay bills. Lipscomb submitted a third-party function report that described Rounds in similar terms, although he also noted that she "sees no reason to want to work." During her oral testimony in August 2010, Rounds described similar daily activities but also testified to experiencing intermittent severe pain in her shoulders, neck, and back.

Rounds' work history is limited to two short-lived jobs as a cashier at a gas station and at a fast food restaurant. She described such work as "hard and exhausting" due to not fitting in with her co-workers and struggling to interact with customers.

### II. Rounds' Medical History

For purposes of this appeal, we focus on whether Rounds was disabled between March 10, 2009, the date of her application, and September 3, 2010, the date of the

ALJ's decision.[1] In January 2009, Rounds visited Dr. Molly McKenna for a comprehensive neuropsychological examination. Dr. McKenna diagnosed Rounds with (a) major depressive disorder, moderate, recurrent, in partial remission, (b) social phobia, (c) pervasive developmental disorder NOS (not otherwise specified), and (d) cognitive disorder NOS. She also noted schizotypal personality traits, recurrent headaches, and a variety of psychosocial stressors. Dr. McKenna noted that Rounds believed she related better to cats than to people, had a difficult childhood, suffered abuse during a prior relationship, and had a history of depression. Nevertheless, she concluded Rounds is "independent for all activities of daily living" and the "primary impediments to returning [her] to full-time gainful employment are her severe social anxiety, unusual beliefs and perceptions, limited verbal and working memory, and poor mental organization." Dr. McKenna opined that "[w]ith appropriate placement in training or employment, she is a good candidate to return to work."

In March and April 2009, Rounds attended five mental health diagnostic and counseling sessions at the Multnomah County Health Department.[2] During her initial appointment, she told the treating physician that she was mainly interested in getting a letter so she could keep her two cats. At various times she also stated that she did not

---

[1] *See* 20 C.F.R. § 416.335 (SSI can only be paid beginning the month after an application is filed).

[2] Although the final chart note in these records is signed and dated August 3, 2009, the final date of contact was April 24, 2009.

want to take medication due to a prior bad experience with Prozac and that she was disinterested in therapy but willing to try it.

Rounds' medical records were reviewed in May 2009 by Dr. Joshua Boyd and Dr. Richard Alley, whose opinions were used in the initial decision to deny her SSI claim. Her records were reviewed again in July 2009 by Dr. Robert Henry and Dr. Martin Kehrli, whose opinions were used in the denial of Rounds' request for reconsideration.

From August 2009 through at least August 2010, Rounds met with a counselor from Lifeworks NW, Nicole Warren. Warren diagnosed Rounds with generalized anxiety disorder and dysthymic disorder, and treated her for depression and anxiety. During these sessions, Rounds twice admitted that one reason for seeking therapy was to have documentation for her disability claim. However, Warren also noted that Rounds "under reports her problems" to medical providers and "can never think of what to say at the doctor's." Rounds described to Warren physical and lifestyle problems including severe shoulder pain, difficulty interacting with other people, a possible psychotic break while living in Virginia, and her inability to pay to heat her apartment.

In February 2010, Rounds learned about the symptoms of fibromyalgia.[3] Suspecting that she might be afflicted

---

[3] Fibromyalgia has previously been described by this Court as "a rheumatic disease" with symptoms that include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004). "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-

with fibromyalgia, she returned to the Multnomah County Health Department and was treated by Dr. Robert Henriques. In February or March 2010, after noting that Rounds "[c]ries with exam and recoils to minimal contact" and had "multiple Tender points on exam," it appears that Dr. Henriques diagnosed Rounds with chronic fibromyalgia syndrome and recommended yoga.[4] The fibromyalgia diagnosis was also mentioned in chart notes for appointments on April 13, 2010 and May 13, 2010, during which Dr. Henriques recommended exercise and stretches. He also prescribed medications for pain, nausea, and sleep.

## III.  Procedural History

Rounds applied for SSI in March 2009, with a protective filing date of March 10, 2009. She alleged that she had been disabled since June 1, 2005, and listed her disabilities as depression, schizophrenia, social phobias, learning disabilities, cognitive problems, and recurring

---

understood within much of the medical community." *Id.* at 590. It is "diagnosed entirely on the basis of patients' reports of pain and other symptoms" and "there are no laboratory tests to confirm the diagnosis." *Id.*

[4] The record is unclear but it appears that an undated, incomplete chart note that described multiple tender points and diagnosed fibromyalgia corresponds to an appointment on February 24, 2010 during which Rounds also had blood work done. This initial visit was also noted by Rounds' therapist. However, a "problem list" from the Health Department indicates that fibromyalgia was first diagnosed on March 12, 2010. The chart notes from the March 12 appointment do not mention any tender points or fibromyalgia, but are also incomplete and do not include the section "Assessment/Plan" where fibromyalgia is mentioned after other appointments.

headaches. Rounds' claim was denied on initial review and again after reconsideration. While awaiting a hearing before an ALJ, Rounds submitted an update alleging that in February and March 2010 she was diagnosed with chronic fibromyalgia syndrome.

In August 2010, an ALJ conducted a hearing and, in September 2010, the ALJ issued his decision denying Rounds' claim. The ALJ followed the five-step evaluation process set out at 20 C.F.R. § 416.920. At Step One, the ALJ found that Rounds had not engaged in substantial gainful activity since March 10, 2009. At Step Two, the ALJ determined that Rounds had severe impairments consisting of major depressive disorder, social phobia, pervasive developmental disorder NOS and cognitive disorder NOS. The ALJ concluded that the record was insufficient to support a finding that fibromyalgia was a medically determinable impairment.

At Step Three, the ALJ determined that Rounds had mild restrictions in activities of daily living, marked difficulties in social functioning, moderate difficulties with concentration, persistence or pace, and no episodes of decompensation. As a result, Rounds' impairments did not meet or equal one of the impairments listed in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Rounds had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform one to two step tasks with no public contact, no teamwork and limited coworker contact." At Step Four, the ALJ determined that Rounds had no past relevant work. Finally, at Step Five, the ALJ relied on a vocational expert's testimony that someone with

Rounds' RFC could perform jobs that exist in the national and local economy, including kitchen helper, hand packager, and recycler/reclaimer. As a result, the ALJ found Rounds was not disabled.

The Social Security Administration Appeals Council denied Rounds' appeal, making the ALJ's decision the final decision of the Commissioner. Rounds appealed to the District Court, which considered the five issues presented for review in this appeal and affirmed the ALJ's decision.

## JURISDICTION

The District Court had jurisdiction under 42 U.S.C. § 405(g). This Court has jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This Court "review[s] the district court's order affirming the ALJ's denial of social security benefits de novo, and reverse[s] only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008), and *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "must be 'more than a mere scintilla,' but may be less than a preponderance." *Id.* at 1110–11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009)). This Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). However, if "the evidence is susceptible to

more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. In addition, this Court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* Overall, the standard of review is "highly deferential." *Valentine*, 574 F.3d at 690.

## DISCUSSION

Rounds contends that the ALJ erred by discrediting her fibromyalgia diagnosis, ignoring opinions from two psychologists, discounting her testimony, discounting other lay witness testimony, and wrongly concluding at Step Five that she could perform jobs that exceed her RFC. We begin by discussing the ALJ's Step Five findings because we hold that they require remand to the ALJ.

### I.   The ALJ's Step Five Findings

At Step Five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). Based on a VE's testimony, the ALJ concluded that Rounds was capable of performing at least three jobs: kitchen helper, hand packager, and recycler/reclaimer. According to the Dictionary of Occupational Titles (DOT), these jobs require a GED Reasoning Level of Two. DOT (4th ed. 1991) § 318.687-010, 1991 WL 672755 (kitchen helper); *id.* § 920.587-018, 1991 WL 687916 (hand packager); *id.* § 929.687-022, 1991 WL 688172 (salvage laborer).

There are six GED Reasoning Levels that range from Level One (simplest) to Level Six (most complex). *Id.*, App. C, § III, 1991 WL 688702. The lowest two levels are:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.* Rounds argues that the ALJ erred because her RFC limitation to "one to two step tasks" exactly matches the Level One standard of carrying out "simple one- or two-step instructions" and is exceeded by the Level Two standard of carrying out "detailed but uninvolved written or oral instructions."

This Court's recent *Zavalin* opinion held that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)). Pursuant to Social Security Ruling (SSR) 00-4p, the ALJ has an affirmative duty to "ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability

determination." *Id.* (quoting *Massachi*, 486 F.3d at 1152–54); SSR 00-4p, 2000 WL 1898704, at \*2, \*4 (Dec. 4, 2000).

In *Zavalin*, this Court remanded to the ALJ because "there [was] an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," which the ALJ had not recognized and reconciled before relying on the VE's testimony. *Id.* at 846–48. We conclude that *Zavalin*—this Court's most recent holding regarding the review of a VE's testimony—controls the analogous facts of this case.

Here, the ALJ stated at the outset of the VE's testimony that "unless you tell me otherwise, I'll assume that your testimony is based on your knowledge, education, training, and experience consistent with the DOT, does that work for you, sir?", to which the VE replied "Yes, sir." Based on that exchange, the ALJ concluded that the VE's testimony was consistent with the DOT. As a result, although the VE's testimony was ostensibly consistent with the DOT, he never directly addressed whether Rounds' limitation to one- to two-step tasks was consistent with jobs requiring Level Two reasoning and, if so, why.

Under these circumstances, *Zavalin* is controlling. There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and *Level One* reasoning. Level One reasoning requires a person to apply "commonsense understanding to carry out simple one- or two-step instructions." The

Commissioner resists the obvious similarity between Rounds' RFC and Level One reasoning, and the concomitant contrast between Rounds' RFC and Level Two reasoning, by stressing that "task" and "instruction" are different terms. In the Commissioner's view, Rounds' inability to complete multi-step *tasks* does not necessarily contradict the VE's opinion that she has the ability to follow detailed *instructions*, as required in Level Two jobs. Based on the record, we disagree. Only tasks with more than one or two steps would require "detailed" instructions. And these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform.

Because the ALJ did not recognize the apparent conflict between Rounds' RFC and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved. As a result, we "cannot determine whether substantial evidence supports the ALJ's step-five finding." *Id.* at 848 (quoting *Massachi*, 486 F.3d at 1154). On remand, the ALJ must determine whether there is a reasonable explanation to justify relying on the VE's testimony.[5] *See id.* at 846–48; *Massachi*, 486 F.3d at 1153–54; *see also Tommasetti*, 533 F.3d at 1042 ("[A]n ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" (quoting *Johnson*, 60 F.3d at 1435)).

---

[5] Alternatively, the VE may be able to identify other jobs that require Level One reasoning and are suitable for someone with Rounds' other limitations.

The ALJ's failure to reconcile this apparent conflict was not harmless. In his RFC assessment, the ALJ did not merely restrict Rounds to "simple" or "repetitive" tasks.[6] Instead, he expressly limited her to "one to two step tasks," apparently to address her "moderate" problems with memory and concentration. There is no explanation in the record as to why the VE or the ALJ may have believed that Rounds' specific limitation to "one to two step tasks" should not be taken at face value. As such, the record does not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error. This Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Zavalin*, 778 F.3d at 848 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)) (holding that ALJ's failure to reconcile apparent conflict between RFC and DOT was not harmless error).[7]

---

[6] Unpublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to "simple" or "repetitive" tasks is consistent with Level Two reasoning. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010); *Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) (unpublished); *Lara v. Astrue*, 305 F. App'x 324, 326 (9th Cir. 2008) (unpublished); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (unpublished). These decisions are inapposite because they did not consider a specific limitation to "one to two step tasks."

[7] In addition to the contentions discussed here, Rounds also contends that the ALJ erred at Step Five because the hypotheticals presented to the VE omitted limitations related to fibromyalgia, the medical opinions of Dr. McKenna and Dr. Boyd, and the lay testimony of Rounds, Lipscomb, and Davidson. She further argues, without citation, that the kitchen helper job conflicts with her RFC because it may

## II. The ALJ's Consideration of the Fibromyalgia Diagnosis

Rounds argues that the ALJ erred by (a) failing to develop the record of her fibromyalgia diagnosis, (b) relying on the opinions of medical experts who reviewed her records before the fibromyalgia diagnosis or who question the existence of fibromyalgia, and (c) substituting the ALJ's own assessment of the fibromyalgia diagnostic criteria for that of her treating physician. However, we need not reach these arguments.[8]

After the ALJ's decision in this case, the Commissioner adopted SSR 12-2p, which designates two separate sets of diagnostic criteria that can establish fibromyalgia as a medically determinable impairment. SSR 12-2p, 2012 WL 3104869, at *2–3 (Jul. 25, 2012). These criteria, published by the American College of Rheumatology in 1990 and 2010, were both available at the time of Rounds' August 2010 hearing and the ALJ's September 2010 decision.[9]

---

involve extensive co-worker contact. As discussed below, the ALJ appropriately considered and incorporated the evidence from Dr. McKenna, Dr. Boyd, Rounds, Lipscomb, and Davidson. If the ALJ determines on remand that Rounds has proven that fibromyalgia is a medically determinable impairment, the ALJ will need to determine whether and, if so, how that diagnosis changes Rounds' RFC and the Step Five analysis.

[8] We also do not reach the Commissioner's argument, adopted by the District Court, that the ALJ fulfilled any duty to develop the record by leaving the record open for two weeks after the hearing.

[9] The 2010 diagnostic criteria were published in Frederick Wolfe, et al., The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity,

However, it appears that the ALJ considered only the 1990 diagnostic criteria and did not consider the 2010 criteria.**[10]** Many of Rounds' symptoms (e.g., cognitive and memory problems, poor sleep, depression, anxiety, headaches, fatigue, dizziness, and nausea) appear to fit the 2010 criteria better than the 1990 criteria. *Id.* at *2–3 & n.9. To be fair to Rounds, and to be consistent with the Commissioner's binding ruling in SSR 12-2p that applies on remand, the ALJ must determine whether Rounds established fibromyalgia as a medically determinable impairment under the 2010 diagnostic criteria. *See* 20 C.F.R. § 402.35(b)(1) (providing that SSRs "are binding on all components of the Social Security Administration"). Because the ALJ has not yet made this determination and it may moot Rounds' other arguments regarding her fibromyalgia diagnosis, we need not reach Rounds' other arguments at this time.

---

62 Arthritis Care & Research 600 (May 2010), available at https://www.rheumatology.org/ACR/practice/clinical/classification/fibr omyalgia/2010_Preliminary_Diagnostic_Criteria.pdf.

**[10]** The ALJ concluded that fibromyalgia's "signs are primarily the tender points" and that "merely stating 'multiple' tender points were positive is not enough." However, in contrast to the 1990 criteria, the 2010 diagnostic criteria do not require a specific number of tender points in specific locations. *See* SSR 12-2p, 2012 WL 3104869, at *2–3. As the Commissioner later ruled, the 2010 criteria can be used to determine that fibromyalgia is a medically determinable impairment "if the case record does not include a report of the results of tender-point testing, or the report does not describe the number and location on the body of the positive tender points." *Id.* at *3 n.6.

### III.    The ALJ's Evaluation of Medical Opinions

Rounds argues that the ALJ erred by ignoring Dr. Boyd's opinion (also adopted by Dr. Rullman) that Rounds has moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. This "opinion" was a checkbox in Dr. Boyd's "Summary Conclusions" and was not repeated in his narrative "Functional Capacity Assessment."

The ALJ did not ignore Dr. Boyd's opinion; rather, he explicitly noted that Dr. Boyd had checked this box and gave the whole of Dr. Boyd's opinion, including the narrative portion, "great weight" in crafting Rounds' RFC.

Rounds also argues that the ALJ improperly rejected some of Dr. McKenna's "Treatment Recommendations" that Rounds should (a) avoid math or use a calculator, (b) write information down and use various memory aids, (c) request that instructions be repeated and provided both verbally and in writing, and (d) limit customer or public contact. However, Dr. McKenna's formal conclusions were set out in a separate section of her report subtitled "Clinical Formulation/Prognosis" and Rounds does not contend that the ALJ ignored those conclusions. An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). In addition, the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

We hold that the ALJ's RFC determination—which limited Rounds to "one to two step tasks with no public contact, no teamwork and limited coworker contact"—

adequately incorporated the opinions of Dr. McKenna and Dr. Boyd.

## IV.    The ALJ's Consideration of Rounds' Testimony

Rounds argues that the ALJ improperly rejected her testimony. Having determined that Rounds' medically determinable impairments could reasonably be expected to cause her alleged symptoms, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Id.* To assess a claimant's credibility, the ALJ may consider, among other factors, "ordinary techniques of credibility evaluation," "inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and "the claimant's daily activities." *Id.* The ALJ must also consider factors including the "observations of treating and examining physicians and other third parties regarding . . . the claimant's symptom[s]; . . . functional restrictions caused by the symptoms; and the claimant's daily activities." *Id.*

Here, the ALJ considered Rounds' written and oral testimony and concluded that Rounds' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The ALJ explicitly did "not discount the claimant's consistent report of significant difficulties, particularly with interpersonal relationships." In support of these conclusions, the ALJ reviewed and summarized the lay and expert testimony in the record. To justify

discounting Rounds' testimony about the severity of her symptoms, the ALJ concluded that her medical records show a higher level of functionality, that she has been uncooperative regarding use of medications and engaging in therapy, and that she appears to access support resources only when she has secondary motivations.

Taken in context, the ALJ's determination of Rounds' RFC was based on the totality of Rounds' and her roommate's testimony about her daily activities and the opinions of Dr. McKenna and Dr. Boyd regarding her functional capabilities. This evidence provides clear and convincing reasons for discounting Rounds' testimony regarding the severity of her symptoms. *See Molina*, 674 F.3d at 1112–14 (affirming ALJ's decision to discount claimant's testimony based on inconsistencies with her daily activities and the medical evidence, and her failure to seek or follow prescribed treatment); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (affirming ALJ's decision to discount claimant's pain testimony based on his doctor's report, his daily activities, and his secondary motive to seek disability benefits). We discern no error in the ALJ's consideration of Rounds' testimony.

## V. The ALJ's Consideration of Lay Witness Testimony

Rounds argues that the ALJ improperly rejected lay witness testimony from Rounds' roommate, Lipscomb, who stated that Rounds needs instructions repeated and has trouble focusing on and finishing tasks. She also argues that the ALJ ignored a lay witness statement from an Oregon state employee, Gary Davidson, who noted that Rounds had memory problems and concluded that she was unable to work outside a sheltered work environment. "[C]ompetent

lay witness testimony 'cannot be disregarded without comment'" and "in order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) and *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) (emphasis omitted).

With respect to Lipscomb, the ALJ described his statement as generally consistent with Rounds' testimony and statements, accepted it "as descriptive of his perceptions," but concluded that "it does not provide sufficient support to alter the RFC arrived at herein." The ALJ also noted that Lipscomb's statement indicated that Rounds sees no reason to want to work, suggesting a secondary motive for applying for SSI. It is not clear that the ALJ rejected Lipscomb's statement at all. The ALJ limited her RFC to one- to two-step tasks, which addressed her memory and focus problems. Even if the ALJ discounted his statement, Lipscomb's admission that Rounds has a secondary motive for seeking SSI was a germane reason for doing so.

As for Davidson, even assuming that he was a "competent lay witness," the ALJ's failure to consider his comments was harmless. Davidson was Rounds' appointed representative for filing her SSI claim. As her advocate, he was not a typical lay witness. Even if he qualified as a lay witness, most of his comments were in the form of conclusions that Rounds is disabled and unable to work outside of a sheltered work environment. These are ultimate determinations reserved to the ALJ. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (noting that even a treating physician's opinion is not binding on the ultimate determination of disability). Davidson's non-conclusory comments refer to "memory

problems" and were addressed in the RFC by limiting Rounds to one- to two-step tasks. Accordingly, to the extent the ALJ may have failed to consider Davidson's lay witness evidence, the error was harmless because it was "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

## CONCLUSION

We affirm in part, vacate in part, and remand to the District Court so that it may remand to the agency for further proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Each party shall bear its own costs on appeal.