**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOY DAVIS, | No.    17-35332 |
| Plaintiff-Appellant, | No. 6:15-cv-02429-CL |
| v. | MEMORANDUM[*] |
| NANCY A. BERRYHILL, Acting Commissioner Social Security, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Mark D. Clarke, Magistrate Judge, Presiding

Submitted August 9, 2018[**]

Before:     TROTT, SILVERMAN, and TALLMAN, Circuit Judges.

Joy Davis appeals the district court's affirmance of the Commissioner of

Social Security's denial of her application for disability insurance benefits under

Title II of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291

and 42 U.S.C. § 405(g). We review de novo the district court decision, *Attmore v.*

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

*Colvin*, 827 F.3d 872, 875 (9th Cir. 2016); and because we conclude that the Commissioner's decision is supported by substantial evidence and free from legal error, we affirm.

## I

The ALJ proffered several specific, clear, and convincing reasons in support of her decision to discount Davis's testimony, including instances of exaggeration and inconsistencies in Davis's statements, the lack of supporting objective medical evidence, and inconsistencies between Davis's daily activities and her alleged symptoms and limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Davis takes issue with other reasons the ALJ provided for rejecting her testimony and disputes specific examples the ALJ provided in support of the reasons enumerated above. Even if Davis's arguments might identify errors, however, the other reasons the ALJ provided are specific, clear, convincing, and supported by the record, rendering any error in evaluating Davis's testimony harmless. *See Molina*, 674 F.3d at 1115.

## II

The ALJ properly discounted treating physician Dr. Kenny's opinion, citing the lack of supporting objective medical test results, as well as its inconsistency

2

with the degree of limitation other physicians identified. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ's conclusion that Dr. Kenny relied upon Davis's subjective reports to determine Davis's limitations, rather than her own observations or medical testing, was also reasonable. Dr. Kenny observed that Davis displayed characteristics such as normal gait, balance, and motor function, but nevertheless opined that Davis had severe physical limitations at odds with these findings, as discussed below. *See Tonapetyan*, 242 F.3d at 1149.

### III

Davis argues that the ALJ committed reversible error at Step 2 when the ALJ did not accept Dr. Kenny's "diagnosis" of peripheral neuropathy as one of her medically determined physical impairments. Citing 20 C.F.R. § 404.1508, the ALJ rejected Dr. Kenny's assertion that Davis suffered from this condition. This regulation requires "medical evidence consisting of signs, symptoms, and laboratory findings." In turn, 20 C.F.R. § 404.1528 says that "[y]our statements alone are not enough to establish that there is a physical . . . impairment." Moreover, the regulations require "medically acceptable clinical diagnostic techniques" to establish the signs of a claimed impairment. 20 C.F.R. § 404.1528(b)-(c) (2014).

Here, the ALJ did not accept Dr. Kenny's "diagnosis" because Dr. Kenny "failed to provide workup for [peripheral neuropathy] consistent with what is

required to be considered by the Social Security Administration and there is electrodiagnostic testing without findings consistent with peripheral neuropathy (SSR 14-1p; Ex 16F; 3F/ 4-6)." The agency's listing for peripheral neuropathy requires "disorganization of motor function . . . in spite of prescribed treatment," meaning "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.14, 11.04B (2014). Dr. Kenny's notes indicate she observed Davis had "normal gait, normal balance, [and] normal motor [function]," and do not indicate Davis displayed objective signs of "disorganization of motor function" in her extremities, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.14, 11.04B (2014). While Dr. Kenny stated Davis complained of numbness in her hands and right foot, this was based on Davis's self-reported symptoms, rather than diagnostic testing.

Nowhere in his briefs does Davis's attorney dispute that the workup required by the Social Security Administration is not present in this record. Counsel's answer to the ALJ's reference to the lack of corroboration in the electrodiagnostic testing is that the testing "did not rule out peripheral neuropathy." A failure to rule out a condition is not proof of that condition.

Counsel's argument that the ALJ "simply disagreed with Dr. Kenny's findings and substituted "*her own* medical judgment in place of an expert medical opinion" is belied by the record.

Accordingly, the ALJ did not err at Step 2 by not finding that peripheral neuropathy constituted a medically determinable impairment. The ALJ properly found Dr. Kenny's diagnosis of peripheral neuropathy to be unsupported by objective medical evidence from her or from elsewhere in the record. Dr. Kenny's notes do not describe findings consistent with the agency's regulations concerning peripheral neuropathy. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.04B, 11.00C (2014).

Moreover, Davis does not identify any limitations stemming from peripheral neuropathy the ALJ did not include in the sequential analysis. As a result, Davis has not demonstrated any error that might be harmful. *See Molina*, 674 F.3d at 1115.

**IV**

Davis's claim that the ALJ erred in formulating the RFC by omitting limitations from her testimony and Dr. Henderson's and Dr. Kenny's opinions turns on her assertions of error for earlier steps in the ALJ's analysis. As Davis has not shown the ALJ committed harmful error in these steps, her contention lacks support. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1175-76 (9th Cir. 2008).

5

Although the ALJ erred by failing to resolve the discrepancies between the Dictionary of Occupational Titles ("DOT") and Davis's RFC for two of the positions the vocational expert identified, the errors were harmless. The ALJ properly relied upon the vocational expert's testimony that Davis could perform the position of counter clerk (photofinishing). The ALJ's and vocational expert's error in referencing the incorrect DOT number for the counter clerk (photofinishing) position was harmless. This job is included at DOT #2<u>4</u>9.366-010, one digit different from the number the vocational expert cited. The vocational expert's testimony that the counter clerk position he identified corresponded with a special vocational preparation ("SVP") level of 2 in the DOT, the SVP for DOT #249.366-010, clarifies this is the position to which he was referring.

Davis's assertion that her RFC limitation to understanding, remembering, and carrying out only simple instructions conflicts with the counter clerk position's requirement of Reasoning Level 2 lacks merit. Davis cites *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015), for support. However, we specifically distinguished the facts in *Rounds* from those in cases such as Davis's, in which the RFC limited the claimant to "simple" tasks. *See id.* at 1004 & n.6. There, the conflict arose from Rounds's particular limitation to "one-to two-step tasks" and Reasoning Level 2's requirement to follow "detailed" instructions. *See id.* Therefore, *Rounds* does not compel the conclusion that the counter clerk position's

Reasoning Level 2 requirement conflicts with Davis's RFC limitation to simple tasks.

Any error the ALJ committed by not fully incorporating examining physician Dr. Henderson's opinion into Davis's residual functional capacity ("RFC") was harmless. The ALJ included in the RFC the requirement that Davis have the option to change from seated to standing position every twenty minutes, a more stringent limitation than Dr. Henderson's restriction to sitting for ninety minutes and standing (and ostensibly walking) for one hour at a time. In addition, the counter clerk position the ALJ found Davis could perform is classified as "light work," which entails "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and "[s]itting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (1983). This is consistent with Dr. Henderson's opinion that Davis could stand and walk for six hours a day in combination and up to three hours a day each. Furthermore, the ALJ included in the hypothetical to the vocational expert the limitations that the individual could "sit, stand, and walk for six hours in an eight-hour day but requires the option to alternate positions between sitting and standing every 20 minutes and also requires the usual breaks at two-hour intervals," consistent with Dr. Henderson's opinion. Thus, any error was "inconsequential to the ultimate nondisability determination,"

rendering it harmless. *See Molina*, 674 F.3d at 1115 (citations and internal quotations omitted).

**AFFIRMED.**