NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANNA R. RODRIGUEZ, | No. 22-35263 |
| Plaintiff-Appellant, | D.C. No. 3:21-cv-05309-MLP |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Michelle L. Peterson, Magistrate Judge, Presiding

Submitted March 29, 2023[**]
Seattle, Washington

Before: NGUYEN and HURWITZ, Circuit Judges, and GUTIERREZ,[***] Chief District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Philip S. Gutierrez, Chief United States District Judge for the Central District of California, sitting by designation.

Anna Rodriguez appeals from the district court's judgment affirming the Commissioner of Social Security's decision denying disability benefits. We have jurisdiction under 28 U.S.C. § 1291. *See* 42 U.S.C. § 405(g). Reviewing the district court's judgment de novo and the underlying decision of the Administrative Law Judge ("ALJ") for substantial evidence, *see Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022), we affirm in part, reverse in part, and remand.

1. The ALJ improperly discounted Dr. Daniel Davenport's finding that Rodriguez "would be unable to [work] at heights or around heavy machinery, temperature extremes, chemicals, dust, fumes, gases, or excessive noise." In assigning "minimal weight" to Dr. Davenport's overall opinion, the ALJ found that Dr. Davenport was "unable to assess [Rodriguez's] exertional or other abilities/limitations because of her inconsistent presentation." But while Dr. Davenport was largely unable to assess Rodriguez's exertional limitations, he personally observed that she exhibited greater physical limitations where "the pressure of the situation . . . made her very uncomfortable," and found the nonexertional, environmental limitations necessary because Rodriguez "clearly withdraws in any situation where she feels frightened or stressed." Thus, substantial evidence does not support the ALJ's reason for rejecting Dr. Davenport's environmental limitations.

2.    The ALJ also improperly rejected Dr. Robert Schneider's assessment of Rodriguez's interactive and adaptive limitations.  This assessment was not solely "based upon [Rodriguez's] self-report."  Dr. Schneider personally observed Rodriguez and compared her to "[i]ndividuals with similar personality structures" who could "regulate their behavior for [only] a brief period of time."  In addition, Dr. Schneider considered observations made by Rodriguez's vocational rehabilitation counselor regarding Rodriguez's "changes in personality" and "different personalities."

Although Dr. Schneider only "encountered [Rodriguez] for a single examination," his opinion was presumptively entitled to more weight than that of agency doctor Shawn Horn, who did not examine Rodriguez.  *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  The ALJ discounted Dr. Schneider's opinion as "vague," yet credited Dr. Horn's unexplained and similarly vague conclusions regarding Rodriguez's limitations.  Dr. Horn provided only boilerplate reasons for rejecting the greater limitations assessed by two other examining doctors—Peter Weiss and Manuel Gomes—that were consistent with the limitations assessed by Dr. Schneider.

Nor was Dr. Schneider's opinion "inconsistent" with treatment notes from Rodriguez's mental-health treatment and community support groups.  While these notes reflect "largely normal mental status findings," they also consistently reflect

that Rodriguez "meets [the] criteria for borderline personality disorder[,] including unstable and intense interpersonal relationships, . . . intense anger, and dissociative symptoms." In one support group session, for example, Rodriguez stated: "I usually feel disconnected from people, or even hostile if I see them day after day." That is in line with Dr. Schneider's conclusion that Rodriguez would have difficulty "controlling her mood" in a work environment.

Dr. Schneider noted Rodriguez's "inconsistent effort" to explain why testing provided "an underestimate of her actual intellectual ability," but her intellectual ability was not the basis of the findings regarding her interactive and adaptive limitations. Dr. Schneider pointed out that Rodriguez "seems to recognize that she actually cannot work with people" to describe her awareness of her limitations, not to rely on her characterizations of them. And Dr. Schneider's observation that Rodriguez was "was extremely controlling, manipulative, invested in her disability identity and had to do things her own way" supported his conclusion that Rodriguez could not perform work that "required her to develop close working relationships with anyone."

3. Rodriguez forfeited her argument that the ALJ improperly discounted lay witness statements because she did not raise it in the district court. *See Smartt*, 53 F.4th at 500. This is not "the 'exceptional' case in which review is necessary to

prevent a miscarriage of justice." *Id.* (quoting *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006)).

4. The ALJ did not err in identifying jobs that satisfy the limitations prescribed by Dr. Horn. Dr. Horn opined that Rodriguez "retains the capacity to interact with others on an occasional/superficial basis," and the ALJ asked the vocational expert to identify jobs that do not require "work[ing] in close coordination with coworkers where team work is required" and involve no more than "casual interaction or contact with the general public." The ALJ was not required to use Dr. Horn's exact language. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Dr. Horn also opined that Rodriguez can "carry out simple 1–3 step instructions," which is consistent with a general educational development reasoning level of two because level one is limited to "simple one- or two-step instructions." *Id.* at 1002. None of the jobs identified by the ALJ require a higher reasoning level than two.

Rodriguez argues that the ALJ erred by finding that she could work as a housekeeper because the vocational expert did not testify that housekeeping fit the hypothetical. Any error was harmless because the vocational expert testified that the other three occupations that the ALJ found Rodriguez could perform have a

combined total of 43,535 jobs in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014).

\* \* \*

Because substantial evidence does not support the ALJ's assessment of the evidence from Drs. Davenport and Schneider, we reverse the district court's contrary determination and remand for the agency to revisit this evidence. If the ALJ's assessment of Rodriguez's residual functional capacity changes, the ALJ will need to revisit the step five finding.

**AFFIRMED in part; REVERSED in part; REMANDED.**