**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

MAR 14 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GLORIA WARD, Estate of Richard Ward, | No.    23-15541 |
| Plaintiff-Appellant, | D.C. No. 3:21-cv-08029-GMS |
| v. | |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, Chief District Judge, Presiding

Submitted March 12, 2024[**]
San Francisco, California

Before:  S.R. THOMAS, McKEOWN, and CHRISTEN, Circuit Judges.

The Estate of Richard Ward appeals the district court's order affirming the

Social Security Administration's denial of disability benefits. We have jurisdiction

under 28 U.S.C. § 1291. We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

The Administrative Law Judge ("ALJ") used the appropriate five-step disability evaluation process. Ward contests the ALJ's step-five finding that Ward was not disabled because he could perform work existing in significant numbers in the national economy. Specifically, the ALJ relied on a vocational expert's testimony to find that Ward could work as a machine operator, production assembler, and bench worker. On appeal, Ward makes three arguments. None are persuasive.

First, Ward argues that the ALJ erred in ignoring a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). If there is a conflict between the expert's testimony and the DOT, then the ALJ may have a duty to question the expert on the conflict before relying on the testimony. *See Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015)). This conflict, however, must be "obvious or apparent" to trigger the ALJ's duty to inquire further. *Id.* (quoting *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017)). There was no obvious or apparent conflict in this case.

At the interim step, the ALJ found that Ward could "perform work involving understanding, remembering and carrying out simple instructions and work with occasional routine changes in the work setting." The jobs that the vocational expert identified—machine operator, production assembler, and bench worker—require

GED Reasoning Level 2. *Dictionary of Occupational Titles* §§ 583.685-122, 706.687-010 (4th ed. 1991). According to the DOT, Level 1 reasoning allows for "occasional or no variables in or from [standardized] situations encountered on the job"; Level 2 reasoning allows for "a few concrete variables in or from standardized situations." *Id.* at Appendix C. The question is whether Ward's residual functional capacity ("occasional routine changes in the work setting") exceeds Level 1 reasoning ("occasional or no variables in or from [standardized] situations encountered on the job") and is, therefore, compatible with Level 2 reasoning ("few concrete variables in or from standardized situations").

We do not see an "obvious or apparent" conflict. Neither of these reasoning level descriptions uses the term "work setting." It is not obvious that a person capable of Level 1 reasoning could handle "occasional routine changes in the work setting." "Work *setting*" changes could be broader and more comprehensive than "variables in [] *situations* encountered on the job." Thus, the ability to handle "occasional routine changes in the work setting" may exceed Level 1 reasoning. Any conflict between the expert testimony and the DOT is not "obvious or apparent." *See Leach*, 70 F.4th at 1255.

Second, Ward argues that the vocational expert, Jeff Beeman, failed to adequately articulate his methodology on cross examination. In *Biestek v. Berryhill*, the Supreme Court rejected a categorical rule requiring a vocational

expert to supply supporting data about job availability whenever the claimant requests it. 139 S. Ct. 1148, 1157 (2019). An expert is permitted to rely on his experience in the field along with published sources. *Id.* at 1152–53. On cross-examination, Ward's counsel questioned Beeman on the methodology he used to come up with his job figures. Beeman replied, "I'm using a composite counselor. My professional experience, various Bureau of Labor Statistics, and Department of Labor Publications. The employment statistic quarterlies. And just relayed it, keeping abreast with, you know, the continuum of the labor market. So, it's a composite of all the statistics." Absent other markers of unreliability, this explanation suffices.

Ward's counsel also presented contrary job figures in post-hearing briefing. An ALJ must resolve a discrepancy between vocational expert testimony and contrary evidence if the purported contrary evidence is both probative and significant. *See Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023). Here, the vocational expert estimated a total of 61,000 jobs that Ward could perform. Ward's counsel estimated somewhere between 16,487 and 59,637 jobs, depending on how one resolves double counts. In dismissing Ward's counsel's count, the ALJ appropriately found that Ward's counsel was not qualified as a vocational expert and that Ward's counsel did explain or provide support for his methodology. *See Id.* at 506–07 (finding that an attorney's post-hearing letter, which included

4

different estimates from Job Browser Pro, was not "probative" because it was unclear if an attorney or a vocational expert conducted the analysis, the methodology was not comparable to that of the vocational expert, and the methodology was otherwise "not comprehensible to a lay person").

Further, the difference in the numbers is generally probative only if the claimant's attorney and the vocational expert used the same sources and reached different numbers. *See Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) ("Unlike in *Buck*, [the claimant's] attorney did not replicate the [vocational expert's] same methodology. It is thus not surprising that [the claimant's] different approach led to different results."). Here, Beeman and Ward's counsel used different sources for their estimates, and therefore, the difference is not probative.

Ward also requests that the panel overturn *Ford v. Saul*, 950 F.3d 1141 (9th Cir. 2020), in an initial en banc proceeding. Our reasoning regarding the reliability of Beeman's testimony does not rely on *Ford*. We are not faced with an "irreconcilable conflict" in our caselaw, and so a sua sponte en banc call is inappropriate. *See Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987). We decline Ward's request for initial en banc review.

Third, Ward argues that the dual layer of for-cause removal protection for the Social Security Commissioner and Social Security Administration ALJs is unconstitutional and seeks a stay of his proceedings until the Supreme Court

5

resolves a related issue in *Jarkesy v. Securities and Exchange Commission*, 34 F.4th 446 (5th Cir. 2022), *cert granted*, 143 S. Ct. 2688 (2023).[1] "A party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party." *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022). Here, Ward offers no theory of nexus and does not explain how the *removal protections* caused the harm.

**AFFIRMED.**

---

[1] We note that after the ALJ decided Ward's benefits claim, the Ninth Circuit invalidated the for-cause removal protection for the Social Security Commissioner and severed the removal provision from the remainder of the statute. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022).